Robert E. DAVIS, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant.

No. 73 C 1302.

United States District Court, N. D. Illinois.

Sept. 9, 1974.

Sherwin J. Malkin, Malkin & Gottlieb, Jerome F. Fallon, John W. Chestnut, Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., for plaintiff.

James G. Hunter, Jr., Daniel W. Vittum, Jr., Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the motions of both parties for an order compelling certain answers to interrogatories and production of catalyst samples. Both parties are in agreement as to some form of simultaneous exchange but disagree as to the scope and method of exchange. The Court is aware of the acute nature of the problem and the reluctance of the parties since each side seeks the discovery of the other's alleged trade secrets.

Plaintiff contends that he has invented, developed, and is the owner of trade secrets relating to certain catalysts for use in the control and suppression of hydrocarbon and carbon monoxide emissions from internal combustion engines.

Plaintiff and defendant previously entered into an agreement whereby plaintiff furnished catalyst samples to defendant in order that defendant could test and evaluate them as part of its automotive emissions control program. The agreement provided for testing the samples but purported to prohibit General Motors from analyzing the composition and design of the catalyst.

In his complaint plaintiff charges *inter alia* that the defendant obtained various alleged trade secrets by analyzing the composition of the sample catalysts in violation of the agreement.

Although both parties have stated a willingness to answer interrogatories relating to the alleged trade secrets, and, to produce catalyst samples, defendant now refuses to answer interrogatories 128(m), 129(m), and 192, all of which deal with the method of production and manufacture of the catalyst for use on General Motors' 1975 vehicles.

The catalysts installed on General Motors' 1975 vehicles are being manufactured and supplied by four different manufacturers. Defendant states that it has only fragmentary information re-

garding the method of manufacture and production. Furthermore, defendant resists answering on the basis of the fact that plaintiff is a competitor of the current suppliers and that any disclosure would be unfair. If compelled to answer interrogatories the defendant has requested a protective order that would give confidentiality to the answers and prevent access to them by the plaintiff.

It is well settled that where information sought is relevant and necessary to the presentation of a case, the fact that such information may constitute a trade secret need not halt the discovery process. Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir. 1965), cert. denied 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); National Utility Service, Inc. v. Northwestern Steel & Wire Co., 426 F.2d 222 (7th Cir. 1970); Natta v. Zletz, 405 F.2d 99 (7th Cir. 1968); Triangle Ink and Color Co., Inc. v. Sherwin-Williams Co., 61 F.R.D. 634 (N.D.Ill.1974).

There is no true privilege against discovery of trade secrets or other confidential business matters but the courts have been willing to exercise their discretion to limit any unnecessary disclosure of such information. A. H. Robins Co. v. Fadely, 299 F.2d 557 (5th Cir. 1962); Moore, Federal Practice Vo. 4, 20.60[4]. Thus, when a court directs discovery in such a case it may choose to impose special conditions for the protection of the party required to answer. Triangle Ink and Color Co., Inc. v. Sherwin-Williams Co., *supra*; Spartanics Ltd. v. Dynetics Engineering Corporation, 54 F.R.D. 524 (N.D.Ill.1972); V. D. Anderson Co. v. Helena Cotton Oil Co., 117 F.Supp. 932 (E.D.Ark.1953).

The nature of the plaintiff's claim in this case is that the defendant has divulged, or intends to divulge, information which it obtained in analyzing the catalysts, to other manufacturers and thereby utilize the benefits of plaintiff's research and technology without compensating plaintiff. Whether or not General Motors' suppliers are manufacturing the catalysts for the 1975 automobiles on the basis of plaintiff's sample catalyst is a crucial question in this litigation. Consequently, the defendant should divulge any information it has regarding the design and manufacture of the catalyst by answering interrogatories 128(m), 129(m) and 192 submitted by plaintiff.

However, because of the sensitive nature of this problem and the potential for even inadvertent disclosure of the alleged trade scerets the Court must take certain precautions in alowing this discovery.

First, since the design of the catalyst may be relevant to plaintiff's case he is entitled to any instructions, plans, or memoranda exchanged between General Motors and the manufacturers which relate to the design of the catalyst used on the 1975 automobiles. However, defendants should not be forced to disclose materials relating to such areas as purchasing, the manufacturing process itself, or other areas not immediately relevant to plaintiff's case. See Stonier v. Droz Wood Company, 52 F.R.D. 232 (E.D. Penn.1971).

Second, because the disclosure of the requested material may affect other parties in addition to the defendant, i. e., manufacturers and suppliers, this Court considers it proper at this time to require that such information be disclosed only to plaintiff's trial attorney and non-party, Court approved, independent experts or consultants. Should counsel for the plaintiff need to consult with the plaintiff regarding this confidential information in order to prepare for the litigation, this Court will entertain a petition to disclose further the essential material.

Accordingly, it is hereby ordered:

1. Plaintiff will answer defendant's interrogatories 6(a)(i), 8, 33(d), 39(a) and 40(a).

2. Defendant will simultaneously answer plaintiff's interrogatories

128 (including (m)), 129 (including (m)), 138, 140–44, 167, 168(c), 169(c), 170(c), 171, 180 (b), 180(c), 180(f), and 180(g).

3. The parties shall simultaneously exchange catalyst samples.

4. Access to any materials which are the subject of or relate to a trade secret or other confidential research, development, or commercial information (hereinafter collectively referred to as "confidential information") and which are disclosed during the course of discovery in this action shall be restricted solely to trial counsel for the party obtaining such discovery:

a. for the purposes of this Order, the term "trial counsel" shall refer only to those attorneys charged with the responsibility for and actively engaged in trial preparation of this case;

b. it shall be the duty of the party claiming privilege as to such confidential information to indicate to the other party and its attorneys which of the materials are considered to be confidential.

5. The term "confidential information" used herein means information designated in writing, or orally if recorded as part of a deposition or court record, by a party as confidential. The term "confidential information" shall include all such designated information whether revealed during a deposition, in a document, in an interrogatory answer, by production of tangible evidence, or otherwise.

6. Samples of automotive emission catalysts heretofore submitted by R. E. Davis Chemical to General Motors Corporation and samples of automotive emission catalysts produced to a party pursuant to discovery proceedings in this action shall, if designated by a party as "confidential information", be deemed to be subject to this Protective Order. If not so designated, the party having possession of such samples may conduct whatever tests, analyses, or evaluations the party deems necessary for purposes of this action, and such party shall not be under a duty to treat the results of such tests, analyses, or evaluations as confidential. Any tests, analyses, or other evaluation conducted by or for the party to which an automotive emission catalyst sample has been submitted or produced shall be promptly reported in writing to the other party, and such reports shall be subject to this Protective Order to the extent that they relate to catalyst samples that have been designated as "confidential information".

7. All transcripts, depositions, exhibits, answers to interrogatories and other documents filed with the Court pursuant to the pretrial discovery of either party to this action which have previously thereto been designated by either party as comprising or containing confidential information and all pleadings or memoranda purporting to reproduce or paraphrase such confidential information shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an indication of the nature of the contents of such sealed envelope or other container, the word "CONFIDENTIAL" and a statement substantially in the following form:

This envelope containing documents which are filed in this case by (name of party) is not to

be opened nor the contents thereof to be displayed or revealed except by order of the Court.

8. All transcripts, depositions, exhibits, answers to interrogatories, other documents, copies thereof, and all other information, composition or equipment, received by counsel for a party pursuant to pretrial discovery in this action which are designated by the opposing party as containing or comprising confidential information shall be retained by such counsel and shall be used by such counsel solely for the purposes of this action and shall not be disclosed by such counsel to others except that and solely for the purposes of this action.

9. The restrictions set forth in any of the preceding paragraphs shall not apply to information which: (a) was, is or becomes public knowledge, not in violation of this order; (b) is acquired by the non-designating party from a third party lawfully possessing such information and/or having no obligation to the owner thereof; or (c) was lawfully possessed by the non-designating party prior to discovery in this action.

10. Any party claiming that any designated information is not confidential information shall have the burden of establishing the basis for such exception.

11. This Protective Order shall be without prejudice to the right of either party to bring before the Court at any time the question of (a) whether any particular information is or is not confidential; or (b) whether any particular information is or is not relevant to any issue of this case. Upon such hearing the party asserting confidentiality or relevance shall have the burden of establishing the same.

12. Nothing is this Protective Order shall be deemed a waiver of either party's right to oppose production of any information or documents for lack of timeliness, relevance or materiality, because the party has no right to disclose information received from third parties or is otherwise under restriction of non-disclosure from third parties, or as a privileged communication, or as trial preparation materials or as not reasonably calculated to lead to the discovery of admissible evidence.

13. On final termination of this action, each party or other party subject to the term hereof shall assemble and return to the originating source all materials and documents constituting confidential information and all copies, summaries, and abstracts thereof, and return or destroy all other materials, memoranda or documents embodying data concerning said materials and documents constituting confidential information.